No. 18,508.

Denver Department of Welfare of the City and County of Denver *v.* Conrad Gomer, Executor of the Estate of George Gomer, Deceased.

(346 P. [2d] 1016)

Decided November 23, 1959.    Rehearing denied December 14, 1959.

Mr. John C. Banks, Mr. Frank A. Elzi, Mr. Robert G. Hoghaug, for plaintiff in error.

Messrs. Schaetzel & Schaetzel, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

WE will refer to plaintiff in error as the Welfare Department, and to the decedent by name.

This action involves a claim filed by the Welfare Department against the estate of George Gomer for reimbursement of welfare payments made to Gomer and his wife Katherine during their lifetime. The claim was presented to the county court on written stipulation, there being no disputed questions of fact. The county court disallowed the claim.

In the year 1933, Katherine Gomer began receiving subsistence checks in small amounts which totaled $257.88 in that year; $147.49 in 1934, and $14.50 in 1935. Thereafter from 1941 to 1954 George Gomer was listed as the recipient of the general assistance funds. They received no relief between the years 1935 and 1941 . At the time of the application in 1933 it was represented to the Welfare Department that Gorge Gomer was the owner of a modest home at 4530 Lincoln St., Denver, Colorado. It was the home in which Mr. Gomer and his wife resided, and where they continued to reside until their respective deaths. Mrs. Gomer died in 1947, and Mr. Gomer in 1956. Mr. Gomer received no relief in either 1955 or 1956. In 1933, at the time of the application, there was a first deed of. trust on their home in favor of the Home Owners Loan Corporation in the amount of $1500.00. The payments thereon were approximately $10.00 a month, and over a period of twenty years the payments on the loan were made by the children of the Gomers. In February 1953 the note was fully satisfied and the deed of trust released. The house is the sole asset of the estate.

There was no contention that the Gomers failed to make full disclosure to the Welfare Department, hence no fraud or deception is involved. It is not contended that the ownership of the property, either with or without the encumbrance, would have affected the Gomers'

eligibility to receive the assistance. Although it does not appear in the record, it is common knowledge that Welfare checks include a budget item for rent. Occupancy of a home owned by the recipient is taken into consideration in lieu of rent. Those entitled to the general assistance are described in C.R.S. '53, 36-10-7, as "Every poor person who shall be unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy or other unavoidable cause * * *." Nowhere is it stated that ownership of a home is a bar to such aid.

The Welfare Department makes claim for reimbursement under C.R.S. '53, 36-10-9, which reads as follows:

"When any such poor person shall not have any such relations in any county in this state, as are named in sections 36-10-7 and 36-10-8, or such relation is not of sufficient ability, or shall fail or refuse to maintain such pauper, then the said pauper shall receive such relief as his case may require, out of the county treasury. If at any time the pauper, or the person liable for the support of such pauper, as in this article provided, *shall acquire or come into possession* of property, moneys, or credits in his own right, he shall be answerable to such county for the expenses of furnishing such relief; the amount thereof to be fixed by resolution of the board of commissioners of such county, and collected by suit in any court of competent jurisdiction." (Emphasis supplied).

The Department contends that when the deed of trust was released in 1953, and while Gomer was still on the relief rolls, he "acquired" or "came into possession of" property as contemplated by the statute. The county court rejected the contention, and we believe properly.

██ ██ It would be a strained construction, indeed, to declare as a proposition of law that when one gets out of debt he acquires or obtains possession of property, moneys or credit. At every stage of the twenty years in which these parties were intermittently on relief, the debt on the house was being reduced. It would be diffi-

cult to ascertain at what point in the twenty years this "acquisition of property" started or became a reality to these people. We believe it was the plain intention of the lawmakers that the property from which reimbursement may be had must be such as would render the person ineligible for assistance. At common law, as a general rule, there was no obligation on the part of the pauper to reimburse public authorities for support furnished. 70 C.J.S. 129. Where a statute does provide for reimbursement in derogation of the common law, as in Colorado, we believe it should not be construed beyond its clear meaning. Here it seems plain that the statute is intended to subject to reimbursement property acquired after the parties are on relief roles and which is not disclosed on the application for assistance. The words "shall acquire" have a future connotation as distinguished from the expression "has acquired." Similarly the words "come into possession of" denote something to be acquired in the future.

In the case at bar, the house in which the parties lived during the entire time they received assistance with full knowledge of the authorities, encumbered or not, is not such property as is contemplated by C.R.S. '53, 36-10-9.

The judgment is affirmed.